UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>            Plaintiff,<br><br>    v.<br><br>ALISTAIR ANDERSON DONALD, et al.,<br><br>            Defendants. | Case No.  10-cv-04425-JSW   (JCS)<br><br>**REPORT AND RECOMMENDATION RE MOTIONS FOR DEFAULT JUDGMENT**<br><br>Re: Docket Nos. 187-189, 191-197 |

## I.      INTRODUCTION

In this breach of contract action, the Court previously denied without prejudice the applications of Plaintiff United States Small Business Administration ("SBA" or "Plaintiff"), in its capacity as Receiver for Rocket Ventures II SBIC, L.P. ("Rocket Ventures"), for default judgment against Defendants Alistair Anderson Donald ("Donald"), Luca Casiraghi ("Casiraghi"), Fred Cucchi ("Cucchi"), Tyna Development c/o Fiderservice SA ("Tyna"), Alberto Gandini ("Gandini"), David Mather ("Mather"), Rijete PTY, Ltd. c/o Brian Wilson ("Rijete"), ValorLife, Hahei, Ltd. c/o Allan Cockell ("Hahei"), and Christopher Stainton ("Stainton") (collectively, "Defaulting Defendants").   Plaintiff now brings renewed applications for default judgment against the same defendants ("the Motions"), which were referred to the undersigned for a Report and Recommendation.  A hearing on the Motions was held on Friday, December 5, 2014 at 9:30 am. Plaintiff filed additional materials in support of the Motion on December 16, 2014 and on January 16, 2015.  For the reasons stated below, it is recommended that the Court GRANT all of the Motions.

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1    II.     **BACKGROUND**

2          A.     **The Amended Complaint**[1]

3          Plaintiff filed its initial Complaint in this action alleging breach of contract claims against

4    Rocket Ventures II, L.P. ("RVII"), Rocket Ventures II CEO Fund, L.P. ("CEO Fund"), and

5    Rocket Ventures SBIC Partners, LLC ("SBIC Partners") on September 30, 2010. Complaint, ¶¶

6    30-47.  On January 18, 2012, Plaintiff filed its Amended Complaint ("FAC"). Docket No. 29. In

7    the FAC, Plaintiffs allege that RVII and CEO Fund are comprised of "Class B Limited Partners."

8    FAC, ¶ 7.  According to Plaintiff, the Defaulting Defendants are Class B Limited Partners of

9    RVII, CEO Fund, or both. *Id.* at ¶¶ 15, 24-29, 32, 42-43, 47.

10         Plaintiff alleges that it is authorized by statute to license Small Business Investment

11   Companies ("SBICs") to provide capital to qualified small business concerns.  *Id.* at ¶ 50. Plaintiff

12   states that the statute authorizes it to prescribe regulations governing operations of the SBICs,

13   which it has exercised by promulgating the regulations reported in Part 107 of Title 13 of the Code

14   of Federal Regulations.  *Id.* (citing 15 U.S.C. § 687(c)). Plaintiff alleges that it is pursuing and

15   preserving all of Rocket Ventures' claims pursuant to a Consent Order of Receivership in the

16   "Receivership Action"[2] and consistent with the governing statutes and regulations.  *Id.* at ¶ 51, Ex.

17   A.

18         Plaintiff alleges the factual background as follows. Rocket Ventures was formed for the

19   purpose of operating as a venture capital fund licensed as a SBIC. *Id.* at ¶ 52. Rocket Ventures

20   held U.S. Small Business Administration Small Business Investment Company License No. 0979-

21   0435 at all relevant times.  *Id.* SBIC Partners was Rocket Ventures' managing general partner.  *Id.*

22   at ¶ 53.  SBIC Partners had exclusive control of Rocket Ventures' management and operations,

23   within the limitations of the governing statutes and regulations.  *Id.*  RVII and CEO Fund were

24   Rocket Ventures' private limited partners. *Id.* at ¶ 54.

25

26   _____

27   [1] The undersigned provided a detailed summary of the allegations in the First Amended Complaint
     in Docket No. 158.  For the convenience of the reader, that summary has been incorporated here
     verbatim.

28   [2] This refers to related proceedings found at *United States of America v. Rocket Ventures II SBIC,*
     *L.P.*, C-08-02240 JSW.

SBIC Partners, RVII, and CEO Fund each entered into the Rocket Ventures Limited Partnership Agreement ("Partnership Agreement") in late 2000. *Id.* at ¶ 55, Ex. B. Under the terms of the Partnership Agreement: (1) SBIC Partners agreed to be general partner of Rocket Ventures, acknowledged and agreed to be bound by the terms of the agreement, and agreed to a capital commitment of $100,000; (2) RVII agreed to be a limited partner of Rocket Ventures, acknowledged and agreed to be bound by the terms of the agreement, and agreed to a capital commitment of $25,730,900; and (3) CEO Fund agreed to be a limited partner of Rocket Ventures, acknowledged and agreed to be bound by the terms of the agreement, and agreed to a capital commitment of $443,500. *Id.* at ¶¶ 56-58. RVII and CEO Fund are "Class A Limited Partners." *Id.* at ¶ 64 n.2.

Rocket Ventures was structured as a "drop down" SBIC fund. *Id.* at ¶ 59. This means that Rocket Ventures' limited partners, RVII and CEO Fund, were to raise capital from their investors (limited partners), and in turn drop down some or all of the capital raised into the SBIC Fund. *Id.* A Capital Certificate submitted to the SBA and certified by Rocket Ventures' then-management identified the individuals and entities that invested in Rocket Ventures' limited partners, RVII and CEO Fund. *Id.* at ¶ 60. These individuals and entities are known as "Class B Limited Partners." *Id.*

Article 5 of the Partnership Agreement governs "Partners' Capital Contributions." *Id.* at ¶ 61, Ex. B. Pursuant to the agreement, "[a]ll capital contributions to the Partnership by [the General Partner and Private Limited Partners] must be in cash, except as provided in this agreement and approved by the SBA." *Id.* at ¶¶ 62, 63 (quoting Partnership Agreement §§ 5.02(a), 5.04). The Partnership Agreement further provides that "[i]f at any time the Class A Limited Partner fails to make a Capital Contribution as required by this Agreement, then the Class B Limited Partners shall contribute to the capital of the Partnership in cash in an amount equal to the Class A Limited Partner's Capital Contribution then in default, with each such Class B Limited Partner being required to contribute its Proportionate Share of the Capital Contribution then in default, provided, however, that the obligation of each Class B Limited Partner to contribute to the capital of the Partnership shall be several, and not joint, and in no event shall any Class B Limited Partner be

required to contribute to the Partnership in an amount greater than the then unpaid amount that such Class B Limited Partner has agreed to contribute to the capital of the Class A Limited Partner." *Id*. at ¶ 64 (quoting Partnership Agreement § 5.02(c)). Pursuant to the Capital Certificate, former management was aware that all Class B Limited Partners were required to execute the Partnership Agreement. *Id*. at ¶ 65.

Rocket Ventures' books and records reflect that RVII failed to make its required capital commitment. *Id*. at ¶¶ 66, 79. As a result, RVII owes a balance of $9,690,144, plus recoverable interest, the amount of its unfunded capital commitment. *Id*. at ¶¶ 66, 80. Rocket Ventures' books and records reflect that CEO Fund failed to make its required capital commitment. *Id*. at ¶¶ 67, 85. As a result, [CEO Fund] owes a balance of $167,640, plus recoverable interest, the amount of its unfunded capital commitment. *Id*. at ¶¶ 67, 86. The Partnership Agreement provides that, where the partnership is liquidated, the general and limited partners must make any unfunded capital commitments if the assets of the partnership are insufficient to repay the partnership obligations owed to the SBA. *Id*. at ¶ 69 (citing Partnership Agreement § 5.06). "The Partnership is entitled to enforce the obligations of each Partner to make contributions to capital specified in [the Partnership Agreement]. The Partnership has all rights and remedies available at law or equity if any such contribution is not so made." *Id*. at ¶ 70 (quoting Partnership Agreement § 5.07(a)). The Partnership Agreement also provides that the general partner may commence legal proceedings against any defaulting partner to collect due and unpaid capital commitments, including interest and attorneys' fees. *Id*. at ¶ 71 (citing Partnership Agreement § 5.07(a)(ii)(D)).

Plaintiff demanded payment of the unfunded capital commitment from the Class A Limited Partners, and, not receiving payment, issued default notices. *Id*. at ¶¶ 72-73, Ex. C. Only RVII made any payment in response to the default notice, and even after payment the shortfall listed above remained. *Id*. at ¶ 66, 72. On September 2, 2010, the court in the receivership action entered an order authorizing Plaintiff to commence this action. *Id*. at ¶ 75, Ex. D.

Plaintiff alleges twelve breach of contract causes of action that are relevant to the present Motions, as follows:

(1) Breach of Contract Against Donald, Count 1: Rocket Ventures' books and records

reflect that Donald executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id.* at ¶ 193. The books and records also reflect that, around that time, Donald executed the Limited Partnership Agreement of RVII. *Id.* at ¶ 194. Further, the books and records reflect that Donald executed a Consent of Limited Partners of Rocket Ventures II, L.P. ("Consent") on or around April 30, 2001. *Id.* at ¶ 195. In the Consent, Donald consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id.* The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Donald and referenced in the Consent. *Id.* at ¶ 196.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Donald's conduct. *Id.* at ¶ 197. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id.* at ¶ 198. Even so, RVII and CEO Fund failed to make payment in full. *Id.* As a result of this failure, the individual Class B Limited Partners, including Donald, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id.* at ¶¶ 15, 199.

On October 21, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Donald pay the full amount of his remaining unfunded capital commitment, then $62,500, by November 30, 2011. *Id.* at ¶ 200. Donald did not do so. *Id.* On December 5, 2011, Plaintiff notified Donald that he was in default and gave him three business days from the date of that notice to make payment in full. *Id.* at ¶ 201. He did not do so. *Id.* As a result, Donald breached the Partnership Agreement and is liable for his remaining share of the unfunded capital commitment, $62,500, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id.* at ¶¶ 202-205.

(2) <u>Breach of Contract Against Donald, Count 2</u>: The allegations against Donald in the second count for breach of contract are similar to those in the first count. The allegations only differ in that they are predicated on Donald's Class B Limited Partnership in CEO Fund, as opposed to RVII. *Id.* at ¶¶ 42, 543-545. In this count, Plaintiff seeks to recover Donald's unfunded capital commitment to CEO Fund, $3,840, plus interest, attorneys' fees, and costs. *Id.* at ¶¶ 553-

United States District Court
Northern District of California

555.

(3) Breach of Contract Against Cucchi:  Rocket Ventures' books and records reflect that Cucchi executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id.* at ¶ 319. The books and records also reflect that, around that time, Cucchi executed the Limited Partnership Agreement of RVII. *Id.* at ¶ 320. Further, the books and records reflect that Cucchi executed the Consent on or around April 30, 2001.  *Id.* at ¶ 321. In the Consent, Cucchi consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id.* The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Cucchi and referenced in the Consent. *Id.* at ¶ 322.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Cucchi's conduct.  *Id.* at ¶ 323. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund.  *Id.* at ¶ 324. Even so, RVII and CEO Fund failed to make payment in full.  *Id.* As a result of this failure, the individual Class B Limited Partners, including Cucchi, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement.  *Id.* at ¶¶ 24, 325.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Cucchi pay the full amount of his remaining unfunded capital commitment, then $98,360, by August 31, 2011.  *Id.* at ¶ 326. Cucchi did not do so.  *Id.* On November 10, 2011, Plaintiff notified Cucchi that he was in default and gave him three business days from the date of that notice to make payment in full.  *Id.* at ¶ 327. He did not do so. *Id.* As a result, Cucchi breached the Partnership Agreement and is liable for his remaining share of the unfunded capital commitment, now $75,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement.  *Id.* at ¶¶ 328-331.

(4) Breach of Contract Against ValorLife: Rocket Ventures' books and records reflect that ValorLife executed a Subscription Agreement and became a limited partner in RVII in or around May 2000.  *Id.* at ¶ 333. The books and records also reflect that, around that time, ValorLife executed the Limited Partnership Agreement of RVII. *Id.* at ¶ 334. Further, the books and records

reflect that ValorLife executed the Consent on or around April 30, 2001. *Id*. at ¶ 335. In the Consent, ValorLife consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to ValorLife and referenced in the Consent. *Id*. at ¶ 336.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by ValorLife's conduct. *Id*. at ¶ 337. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id*. at ¶ 338.  Even so, RVII and CEO Fund failed to make payment in full. *Id*. As a result of this failure, the individual Class B Limited Partners, including ValorLife, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 25, 339.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded ValorLife pay the full amount of his remaining unfunded capital commitment, then $445,519.50, by August 31, 2011. *Id*. at ¶ 340. ValorLife did not do so. *Id*. On November 10, 2011, Plaintiff notified ValorLife that it was in default and gave it three business days from the date of that notice to make payment in full. *Id*. at ¶ 341. ValorLife did not do so. *Id*. As a result, ValorLife breached the Partnership Agreement and is liable for its remaining share of the unfunded capital commitment, now $339,800, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id*. at ¶¶ 342-346.

(5) <u>Breach of Contract Against Gandini</u>: Rocket Ventures' books and records reflect that Gandini executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id*. at ¶ 347. The books and records also reflect that, around that time, Gandini executed the Limited Partnership Agreement of RVII. *Id*. at ¶ 348. Further, the books and records reflect that Gandini executed the Consent on or around April 30, 2001. *Id*. at ¶ 349. In the Consent, Gandini consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Gandini and referenced in the Consent. *Id*. at ¶ 350. Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or

United States District Court
Northern District of California

1    excused by Gandini's conduct.  *Id*. at ¶ 351. Pursuant to the Partnership Agreement, Plaintiff

2    demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners,

3    RVII and CEO Fund. *Id*. at ¶ 352.  Even so, RVII and CEO Fund failed to make payment in full.

4    *Id*. As a result of this failure, the individual Class B Limited Partners, including Gandini, are each

5    liable for their proportionate share of the unfunded capital commitment in accordance with section

6    5.02(c) of the Partnership Agreement.  *Id*. at ¶¶ 26, 353.

7         On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded

8    Gandini pay the full amount of his remaining unfunded capital commitment, then $148,511.50, by

9    August 31, 2011.  *Id*. at ¶ 354. Gandini did not do so.  *Id*. On November 10, 2011, Plaintiff

10   notified Gandini that he was in default and gave him three business days from the date of that

11   notice to make payment in full.  *Id*. at ¶ 355. He did not do so.  *Id*. As a result, Gandini breached

12   the Partnership Agreement and is liable for his remaining share of the unfunded capital

13   commitment, $148,511, plus interest and attorneys' fees and costs recoverable pursuant to the

14   Partnership Agreement.  *Id*. at ¶¶ 356-359.

15        (6) <u>Breach of Contract Against Rijete, Count 1</u>: Rocket Ventures' books and records

16   reflect that Rijete executed a Subscription Agreement and became a limited partner in RVII in or

17   around May 2000. *Id*. at ¶ 361. The books and records also reflect that, around that time, Rijete

18   executed the Limited Partnership Agreement of RVII. *Id*. at ¶ 362. Further, the books and records

19   reflect that Rijete executed the Consent on or around April 30, 2001. *Id*. at ¶ 363. In the Consent,

20   Rijete consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures.

21   *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was

22   submitted to Rijete and referenced in the Consent. *Id*. at ¶ 364.

23        Plaintiff and Rocket Ventures performed as required under the Partnership Agreement,

24   except where prevented or excused by Rijete's conduct.  *Id*. at ¶ 365. Pursuant to the Partnership

25   Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket

26   Ventures' limited partners, RVII and CEO Fund.  *Id*. at ¶ 366. Even so, RVII and CEO Fund failed

27   to make payment in full.  *Id*. As a result of this failure, the individual Class B Limited Partners,

28   including Rijete, are each liable for their proportionate share of the unfunded capital commitment

United States District Court
Northern District of California

8

in accordance with section 5.02(c) of the Partnership Agreement. *Id.* at ¶¶ 27, 367.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Rijete pay the full amount of its remaining unfunded capital commitment, then $60,137, by August 31, 2011. *Id.* at ¶ 368. Rijete did not do so. *Id.* On November 10, 2011, Plaintiff notified Rijete that it was in default and gave it three business days from the date of that notice to make payment in full. *Id.* at ¶ 369. It did not do so. *Id.* As a result, Rijete breached the Partnership Agreement and is liable for its remaining share of the unfunded capital commitment, now $38,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id.* at ¶¶ 370-373.

(7) <u>Breach of Contract Against Rijete, Count 2</u>: The allegations against Rijete in the second count for breach of contract are similar to those in the first count. The allegations only differ (1) in that they are predicated on Rijete's Class B Limited Partnership in CEO Fund, as opposed to RVII; and (2) in that the time Rijete was given to respond to the initial demand for payment ran from August 26, 2011 to August 30, 2011. *Id.* at ¶¶ 47, 627-629. In this count, Plaintiff seeks to recover Rijete's unfunded capital commitment to CEO Fund, $7,515, plus interest, attorneys' fees, and costs.  *Id.* at ¶¶ 637-639.

(8) <u>Breach of Contract Against Stainton</u>: Rocket Ventures' books and records reflect that Stainton executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id.* at ¶ 375. The books and records also reflect that, around that time, Stainton executed the Limited Partnership Agreement of RVII. *Id.* at ¶ 376. Further, the books and records reflect that Stainton executed the Consent on or around April 30, 2001. *Id.* at ¶ 377. In the Consent, Stainton consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id.* The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Stainton and referenced in the Consent. *Id.* at ¶ 378.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Stainton's conduct. *Id.* at ¶ 379. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id.* at ¶ 380. Even so, RVII and CEO Fund failed

United States District Court
Northern District of California

9

to make payment in full. *Id*. As a result of this failure, the individual Class B Limited Partners, including Stainton, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 28, 381.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Stainton pay the full amount of his remaining unfunded capital commitment, then $30,000, by August 31, 2011. *Id*. at ¶ 382. Stainton did not do so. *Id*. On December 5, 2011, Plaintiff notified Stainton that he was in default and gave him three business days from the date of that notice to make payment in full. *Id*. at ¶ 383. He did not do so. *Id*. As a result, Stainton breached the Partnership Agreement and is liable for his remaining share of the unfunded capital commitment, now $25,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id*. at ¶¶ 384-387.

(9) <u>Breach of Contract Against Tyna</u>: Rocket Ventures' books and records reflect that Tyna executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id*. at ¶ 389. The books and records also reflect that, around that time, Tyna executed the Limited Partnership Agreement of RVII. *Id*. at ¶ 390. Further, the books and records reflect that Tyna executed the Consent on or around April 30, 2001. *Id*. at ¶ 391. In the Consent, Tyna consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Tyna and referenced in the Consent. *Id*. at ¶ 392.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Tyna's conduct. *Id*. at ¶ 393. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id*. at ¶ 394. Even so, RVII and CEO Fund failed to make payment in full. *Id*. As a result of this failure, the individual Class B Limited Partners, including Tyna, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 29, 395.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Tyna pay the full amount of his remaining unfunded capital commitment, then $150,085, by August 31,

2011.  *Id*. at ¶ 396. Tyna did not do so. *Id*. On November 10, 2011, Plaintiff notified Tyna that it was in default and gave it three business days from the date of that notice to make payment in full. *Id*. at ¶ 397. It did not do so. *Id*. As a result, Tyna breached the Partnership Agreement and is liable for its remaining share of the unfunded capital commitment, now $125,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id*. at ¶¶ 398-401.

(10) <u>Breach of Contract Against Hahei</u>: Rocket Ventures' books and records reflect that Hahei executed a Subscription Agreement and became a limited partner in RVII in or around May 2000. *Id*. at ¶ 431. The books and records also reflect that, around that time, Hahei executed the Limited Partnership Agreement of RVII. *Id*. at ¶ 432. Further, the books and records reflect that Donald executed the Consent on or around April 30, 2001. *Id*. at ¶ 433. In the Consent, Hahei consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Hahei and referenced in the Consent. *Id*. at ¶ 434.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Hahei's conduct. *Id*. at ¶ 435. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id*. at ¶ 436. Even so, RVII and CEO Fund failed to make payment in full. Id. As a result of this failure, the individual Class B Limited Partners, including Hahei, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 32, 437.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Hahei pay the full amount of his remaining unfunded capital commitment, then $300,000, by August 31, 2011. *Id*. at ¶ 438. Hahei did not do so. *Id*. On November 10, 2011, Plaintiff notified Hahei that it was in default and gave it three business days from the date of that notice to make payment in full. *Id*. at ¶ 439. Hahei did not do so. *Id*. As a result, Hahei breached the Partnership Agreement and is liable for its remaining share of the unfunded capital commitment, $300,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id*. at ¶¶ 440-443.

11

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(11) <u>Breach of Contract Against Casiraghi</u>: Rocket Ventures' books and records reflect that Casiraghi executed a Subscription Agreement and became a limited partner in RVII in or around May2000. *Id*. at ¶ 529. The books and records also reflect that, around that time, Casiraghi executed the Limited Partnership Agreement of RVII. *Id*. at ¶ 530. Further, the books and records reflect that Casiraghi executed the Consent on or around April 30, 2001. *Id*. at ¶ 531. In the Consent, Casiraghi consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Casiraghi and referenced in the Consent. *Id*. at ¶ 532.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Casiraghi's conduct. *Id*. at ¶ 533. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id*. at ¶ 534. Even so, RVII and CEO Fund failed to make payment in full. *Id*. As a result of this failure, the individual Class B Limited Partners, including Casiraghi, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 40, 535.

On June 26, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Casiraghi pay the full amount of his remaining unfunded capital commitment, then $150,000, by August 31, 2011. *Id*. at ¶ 536. Casiraghi did not do so. *Id*. On November 10, 2011, Plaintiff notified Casiraghi that he was in default and gave him three business days from the date of that notice to make payment in full. *Id*. at ¶ 537. He did not do so. *Id*. As a result, Casiraghi breached the Partnership Agreement and is liable for his remaining share of the unfunded capital commitment, $150,000, plus interest and attorneys' fees and costs recoverable pursuant to the Partnership Agreement. *Id*. at ¶¶ 538-541.

(12) <u>Breach of Contract Against Mather</u>: Rocket Ventures' books and records reflect that Mather executed a Subscription Agreement and became a limited partner in CEO Fund in or around May 2000. *Id*. at ¶ 571. The books and records also reflect that, around that time, Mather executed the Limited Partnership Agreement of CEO Fund. *Id*. at ¶ 572. Further, the books and records reflect that Mather executed a Consent of Limited Partners of Rocket Ventures II CEO

Fund, L.P. ("Consent") on or around April 30, 2001. *Id*. at ¶ 573. In the Consent, Mather consented to becoming a Conditional Class B Private Limited Partner of Rocket Ventures. *Id*. The Partnership Agreement, in a form substantially similar or identical to its present form, was submitted to Mather and referenced in the Consent. *Id*. at ¶ 574.

Plaintiff and Rocket Ventures performed as required under the Partnership Agreement, except where prevented or excused by Mather's conduct. *Id*. at ¶ 575. Pursuant to the Partnership Agreement, Plaintiff demanded payment of the unfunded capital commitment from Rocket Ventures' limited partners, RVII and CEO Fund. *Id*. at ¶ 576. Even so, RVII and CEO Fund failed to make payment in full. *Id*. As a result of this failure, the individual Class B Limited Partners, including Mather, are each liable for their proportionate share of the unfunded capital commitment in accordance with section 5.02(c) of the Partnership Agreement. *Id*. at ¶¶ 43, 577.

On October 21, 2011, in accordance with the Partnership Agreement, Plaintiff demanded Mather pay the full amount of his remaining unfunded capital commitment, then $15,000, by November 30, 2011. *Id*. at ¶ 578. Mather did not do so. *Id*. On December 5, 2011, Plaintiff notified Mather that he was in default and gave him three business days from the date of that notice to make payment in full. *Id*. at ¶ 579. He did not do so. *Id*. As a result, Mather breached the Partnership Agreement and is liable for his remaining share of the unfunded capital commitment, $15,000, plus interest and attorneys' fees and costs recoverable pursuant to the partnership agreement. *Id.* at ¶¶ 580-583.

**B.    Dismissal of Non-Defaulting Defendants**

The non-defaulting Class B Limited Partners were dismissed in a series of stipulated dismissals. *See* Docket Nos. 77, 86, 147, 166, 167 and 169.  On July 21, 2014, the Court entered Judgment against the Class A partners pursuant to stipulation of the parties in the amount of $7,780,241.49, plus post-judgment interest that continues to accrue at prime rate plus 4%.  Dkt. No. 186 ("Class A partner Judgment").  On July 25, 2014, the Court dismissed the three remaining defendants (RVII, CEO Fund and SBIC Partners) pursuant to a stipulation of the parties that all claims against these defendants had been settled and resolved.  Docket No. 200.

United States District Court
Northern District of California

C.   **Renewed Motions for Default Judgment**

    1.  **Donald**

The Clerk entered default as to Donald on August 23, 2012.  Renewed Application For Entry of Default Judgment Against Alistair Anderson Donald ("Donald Motion") at 2 (citing Dkt. No. 104).  Plaintiff asserts that it is entitled to judgment against Donald on its two counts of breach of contract, which are based on Donald's obligation under the Partnership Agreement to make certain capital contributions to RVII and to CEO Fund.[3]  Plaintiff seeks an award of: 1) combined unpaid principal in the amount of $66,340; 2)  prejudgment interest in the combined amount of $12,625.33; 3)  post-judgment interest  "that continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership agreement," and  4) attorneys' fees in an unspecified amount. [4]

Plaintiff submits two declarations in support of its motion. Plaintiff's attorney, Melissa S. Lor ("Lor"), declares that Plaintiff filed a request for entry of Default against Donald on August 20, 2012. Declaration of Melissa S. Lor in Support of Renewed Application for Default Judgment Against Alistair Anderson Donald, ¶ 4 (citing Dkt. No. 95). Lor declares that default was entered three days later. *Id*. at ¶ 5. Lor further states that on July 25, 2014, the Donald Motion was served on Donald in "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101 California Street, 5th Floor San Francisco, CA 94111-5800."  *Id*. at ¶ 6. Lor declares that Donald is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id*. at ¶ 8.

Second, Richard Moser ("Moser") submits a declaration based on his work, from September 2008 to August 2010, at Phoenix Management, Plaintiff's Principal Agent, and his review of Rocket Ventures' business books and records. Declaration of Richard Moser in Support of Renewed Application for Default Judgment By Court Against Alistair Anderson Donald, ¶¶ 1-

---

[3] Although Plaintiff references only the first count in discussing the substantive merits of its claims against Donald, Plaintiff seeks an award of damages on both of these counts.  *See*  Donald Motion at 3-4, 7.

[4] At oral argument, Plaintiff stipulated that it does not intend to seek an award of attorneys' fees against any of the defendants who are the subject of this Motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

3. Moser provides a spreadsheet containing the principal amount in default by each Defendant on each count, the date of that default, the interest rate, the interest that accrued on the principal amount in default up to July 15, 2014, and the total amount due including interest as of July 15, 2014 (calculated using a rate of 7.25%, that is, 4% plus prime (3.25%) interest rate). *Id.* at ¶¶ 4-6, Ex. A. Moser declares that Donald was in default for the amount of $78,965.33 in principal and interest as of July 15, 2014, not including attorneys' fees or costs. *Id.* at ¶ 6.

7

8

9

10

11

12

13

Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014, giving rise to a total amount due as of December 15, 2015 of $80,969.35. *See* Supplemental Brief in Support of Renewed Applications for Default Judgment by Court Against Defendants: 1) Luca Casiraghi; 2) Fred Cuchi; 3) Alistair Anderson Donald; 4) Alberto Gandini; 5) Hahei, Ltd.; 6) Rijete Pty, Ltd; 7) Christopher Stainton; 8) Tyna Development; 9) Valorlife; and 10) David Mather ("Supplemental Brief"), Ex. A ("Updated Spreadsheet").

14

### 2. Cucchi

15

16

17

18

19

20

21

22

The Clerk entered default as to Cucchi on August 23, 2012. Renewed Application For Entry of Default Judgment Against Fred Cucchi ("Cucchi Motion") at 2 (citing Dkt. No. 103). Plaintiff asserts that it is entitled to judgment against Cucchi on its breach of contract claim based on Cucchi's obligation under the Partnership Agreement to make certain capital contributions to RVII. Motion at 3. Plaintiff seeks an award of: 1) $75,000 for the unpaid principal; 2) prejudgment interest in the amount of $15,632.81; 3) post-judgment interest "that continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership agreement," and 4) attorneys' fees in an unspecified amount.

23

24

25

26

27

28

Plaintiff submits declarations from Lor and Moser in support of its motion. Lor declares that Plaintiff filed a request for entry of Default against Cucchi on August 20, 2012. Declaration of Melissa S. Lor in Support of Renewed Application for Default Judgment Against Fred Cucchi, ¶ 4 (citing Dkt. No. 96). Lor declares that default was entered three days later. *Id.* at ¶ 5. Lor declares that default was entered three days later. *Id.* at ¶ 5. Lor further states that on July 25, 2014, the Cucchi Motion was served on Cucchi in "c/o Designated Agent Rocket Ventures II, L.P.

1    and /or  c/o Gordon C. Atkinson, 101 California Street, 5th Floor San Francisco, CA 94111-5800."

2    *Id*. at ¶ 6.  Lor declares that Cucchi is not a minor or incompetent person and the Service Members

3    Civil Relief Act does not apply. *Id*. at ¶ 8.

4            Moser submits a declaration that is substantially the same as the one described above, with

5    an identical Exhibit A. Moser Declaration in Support of Renewed Application for Default

6    Judgment by Court Against Defendant Fred Cucchi, ¶¶ 1-6, Ex. A. Moser declares that Cucchi

7    was in default for the amount of $90,632.81 as of July 15, 2014, not including attorneys' fees or

8    costs.  *Id*. at ¶ 6.

9            Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting

10   the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014,

11   giving rise to a total amount due as of December 15, 2014 of  $92,898.44.  *See* Supplemental

12   Brief, Ex. A (Updated Spreadsheet).

13           **3.   ValorLife**

14           The Clerk entered default as to ValorLife on August 23, 2012.  Renewed Application For

15   Default Judgment By Court Against Defendant ValorLife  ("ValorLife Motion") at 2 (citing Dkt.

16   No. 103).  Plaintiff asserts that it is entitled to judgment against ValorLife on its breach of contract

17   claim based on ValorLife's obligation under the Partnership Agreement to make certain capital

18   contributions to RVII.  Motion at 3.  Plaintiff seeks an award of: 1) $339,800.00 for the unpaid

19   principal; 2)  prejudgment interest in the amount of $70,827.06; 3)  post-judgment interest  "that

20   continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited

21   partnership agreement," and  4) attorneys' fees in an unspecified amount.

22           Plaintiff submits declarations from Lor and Moser in support of its motion. Lor declares

23   that Plaintiff filed a request for entry of Default against ValorLife on August 17, 2012. Declaration

24   of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against

25   Defendant ValorLife, ¶ 4 (citing Dkt. No. 94).  Lor declares that default was entered six days later.

26   *Id*. at ¶ 5. Lor further states that on July 25, 2014, the ValorLife Motion was served on ValorLife

27   in "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101

28   California Street, 5th Floor San Francisco, CA 94111-5800."  *Id*. at ¶ 6.  Lor declares that

United States District Court
Northern District of California

16

ValorLife is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id*. at ¶ 8.

Moser submits a declaration that is substantially the same as the one described above, with an identical Exhibit A. Declaration of Richard Moser in Support of Renewed Application for Default Judgment By Court Against Defendant ValorLife, ¶¶ 1-6, Ex. A. Moser declares that ValorLife was in default for the amount of $410,627.06 as of July 15, 2014, not including attorneys' fees or costs. *Id*. at ¶ 6.

Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014, giving rise to a total amount due as of December 15, 2014 of $420,891.84. *See* Supplemental Brief, Ex. A (Updated Spreadsheet).

### 4. Gandini

The Clerk entered default as to Gandini on August 23, 2012. Renewed Application For Default Judgment By Court Against Defendant Alberto Gandini ("Gandini Motion") at 2 (citing Dkt. No. 103). Plaintiff asserts it is entitled to judgment against Gandini on its breach of contract claim based on Gandini's obligation under the Partnership Agreement to make certain capital contributions to RVII. *Id*. at 3-4. Plaintiff seeks an award of: 1) $148,511.00 for the unpaid principal; 2) prejudgment interest in the amount of $30,955.26; 3) post-judgment interest "that continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership agreement," and 4) attorneys' fees in an unspecified amount.

Plaintiff submits declarations from Lor and Moser in support of its motion. Lor declares that Plaintiff filed a request for entry of Default against Gandini on August 20, 2012. Declaration of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against Defendant Alberto Gandini, ¶ 4 (citing Dkt. No. 97). Lor declares that default was entered three days later. *Id*. at ¶ 5. Lor further states that on July 25, 2014, the Gandini Motion was served on Gandini in "c/o Designated Agent Rocket Ventures II, L.P. and /or c/o Gordon C. Atkinson, 101 California Street, 5th Floor San Francisco, CA 94111-5800." *Id*. at ¶ 6. Lor declares that Gandini is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id*.

United States District Court
Northern District of California

1    at ¶ 8.

2        Moser submits a declaration that is substantially the same as the one described above, with

3    an identical Exhibit A. Declaration of Richard Moser in Support of Entry of Renewed Application

4    for Default Judgment By Court Against Defendant Alberto Gandini, ¶¶ 1-6, Ex. A. Moser declares

5    that Gandini was in default for the amount of $179,466.26 as of July 15, 2014, not including

6    attorneys' fees or costs. *Id*. at ¶ 6.

7        Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting

8    the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014,

9    giving rise to a total amount due as of December 15, 2014 of $183,952.53. *See* Supplemental

10    Brief, Ex. A (Updated Spreadsheet).

11             **5.  Rijete**

12        The Clerk entered default as to Rijete on August 23, 2012.  Renewed Application For

13    Default Judgment By Court Against Defendant Rijete PTY, Ltd. ("Rijete Motion") at 2 (citing

14    Dkt. No. 104). Plaintiff asserts that it is entitled to judgment on its two counts of breach of

15    contract, which are based on Rijete's obligation under the Partnership Agreement to make certain

16    capital contributions to RVII and to CEO Fund.[5]  Plaintiff seeks an award of: 1) combined unpaid

17    principal in the amount of $45,515.00; 2)  prejudgment interest in the combined amount of

18    $9,487.04; 3)  post-judgment interest  "that continues to accrue at 4% plus prime on the

19    outstanding amount pursuant to the limited partnership agreement," and  4) attorneys' fees in an

20    unspecified amount.

21        Plaintiff submits declarations from Lor and Moser in support of its motion.  Lor declares

22    that Plaintiff filed a request for entry of Default against Rijete on August 20, 2012.  Declaration of

23    Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against

24    Defendant Rijete PTY, Ltd., ¶ 4 (citing Dkt. No. 99).  Lor declares that default was entered three

25    days later.  *Id*. at ¶ 5.  Lor further states that on July 25, 2014, the Rijete Motion was served on

26

27    ――――――――――――

[5] Although Plaintiff references only the first count in discussing the substantive merits of its
28    claims against Rijete, Plaintiff seeks an award of damages on both of these counts.  *See*  Rijete
     Motion at 3-4, 7.

United States District Court
Northern District of California

Rijete in "c/o Designated Agent Rocket Ventures II, L.P. and /or c/o Gordon C. Atkinson, 101 California Street, 5th Floor San Francisco, CA 94111-5800." *Id*. at ¶ 6. Lor declares that Rijete is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id*. at ¶ 8.

Moser submits a declaration that is substantially the same as the one described above, with an identical Exhibit A. Declaration of Richard Moser in Support of Renewed Application for Default Judgment By Court Against Defendant Rijete PTY, Ltd., ¶¶ 1-6, Ex. A. Moser declares that Rijete was in default for the amount of $55,002.04, as of July 15, 2014, not including attorneys' fees or costs. *Id*. at ¶ 6.

Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014, giving rise to a total amount due as of December 15, 2014 of $56,376.96. *See* Supplemental Brief, Ex. A (Updated Spreadsheet).

### 6. Stainton

The Clerk entered default as to Stainton on December 21, 2012. Renewed Application For Default Judgment By Court Against Defendant Christopher Stainton ("Stainton Motion") at 2 (citing Dkt. No. 123). Plaintiff asserts it is entitled to judgment against Stainton on its breach of contract claim based on Stainton's obligation under the Partnership Agreement to make certain capital contributions to RVII. *Id.* at 3-4. In the Stainton Motion, Plaintiff seeks an award of: 1) $30,000 for the unpaid principal; 2) prejudgment interest in the amount of $6,253.13; 3) post-judgment interest "that continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership agreement," and 4) attorneys' fees in an unspecified amount.

Plaintiff submits declarations from Lor and Moser in support of its motion. Lor declares that Plaintiff filed a request for entry of Default against Stainton on December 19, 2012. Declaration of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against Defendant Christopher Stainton, ¶ 4 (citing Dkt. No. 119). Lor declares that default was entered two days later. *Id*. at ¶ 5. Lor further states that on July 24, 2014, the Stainton Motion was served on Stainton in "c/o Designated Agent Rocket Ventures II, L.P. and /or c/o Gordon C.

Atkinson, 101 California Street, 5th Floor San Francisco, CA 94111-5800." *Id.* at ¶ 6.  Lor declares that Stainton is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id.* at ¶ 8.

Moser submits a declaration that is substantially the same as the one described above, with an identical Exhibit A. Declaration of Richard Moser in Support of Renewed Application for Default Judgment By Court Against Defendant Christopher Stainton, ¶¶ 1-6, Ex. A. Moser declares that Stainton was in default for the amount of $36,253.13 as of July 15, 2014, not including attorneys' fees or costs.  *Id.* at ¶ 6.

Following the motion hearing, Plaintiff stipulated in the Supplemental Brief that the amount of unpaid principal requested in the motion ($30,000) as to Stainton was a typographical error and that in fact, Stainton owes $25,000 in unpaid principal.  Supplemental Brief at 2-3.  With this correction, the Updated Spreadsheet reflects that as of December 15, 2014, the outstanding amount due as to Stainton was $30,966.15.  *See* Supplemental Brief, Ex. A (Updated Spreadsheet).

### 7.  Tyna

The Clerk entered default as to Tyna on August 23, 2012. Renewed Application For Default Judgment By Court Against Defendant Tyna Development ("Tyna Motion") at 2 (citing Dkt. No. 103). Plaintiff asserts that it is entitled to judgment against Tyna on its breach of contract claim based on Tyna's obligation under the Partnership Agreement to make certain capital contributions to RVII.  *Id.* at 3-4.  Plaintiff seeks an award of: 1) $125,000.00 for the unpaid principal; 2)  prejudgment interest in the amount of $26,054.69; 3)  post-judgment interest  "that continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership agreement," and  4) attorneys' fees in an unspecified amount.

Plaintiff submits declarations from Lor and Moser in support of its motion. Lor declares that Plaintiff filed a request for entry of Default against Tyna on August 20, 2012. Declaration of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against Defendant Tyna Development, ¶ 4 (citing Dkt. No. 98).  Lor declares that default was entered three days later.  *Id.* at ¶ 5.  Lor further states that on July 25, 2014, the Tyna Motion was served

1    on Tyna in "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101

2    California Street, 5th Floor San Francisco, CA 94111-5800."  *Id*. at ¶ 6.  Lor declares that Tyna is

3    not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id*. at

4    ¶ 8.

5          Moser submits a declaration that is substantially the same as the one described above, with

6    an identical Exhibit A.  Declaration of Richard Moser in Support of Renewed Application for

7    Default Judgment By Court Against Defendant Tyna Development, ¶¶ 1-6, Ex. A. Moser declares

8    that Tyna was in default for the amount of $151,054.69 as of July 15, 2014, not including

9    attorneys' fees or costs.  *Id*. at ¶ 6.

10          Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting

11    the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014,

12    giving rise to a total amount due as of December 15, 2014 of $154,830.73.  *See* Supplemental

13    Brief, Ex. A (Updated Spreadsheet).

14                    **8.   Hahei**

15          The Clerk entered default as to Hahei on December 27, 2012. Renewed Application For

16    Default Judgment By Court Against Defendant Hahei, Ltd. ("Hahei Motion") at 2 (citing Dkt. No.

17    124).  Plaintiff asserts that it is entitled to judgment against Hahei on its breach of contract claim

18    based on Hahei's obligation under the Partnership Agreement to make certain capital contributions

19    to RVII.  *Id*. at 3-4. Plaintiff seeks an award of: 1) $300,000.00 for the unpaid principal; 2)

20    prejudgment interest in the amount of $62,531.25; 3)  post-judgment interest  "that continues to

21    accrue at 4% plus prime on the outstanding amount pursuant to the limited partnership

22    agreement," and  4) attorneys' fees in an unspecified amount.

23          Plaintiff submits declarations from Lor and Moser in support of its motion.  Lor declares

24    that Plaintiff filed a request for entry of Default against Hahei on December 19, 2012. Declaration

25    of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court  Against

26    Defendant Hahei, Ltd., ¶ 4 (citing Dkt. No. 122).  Lor declares that default was entered eight days

27    later.  *Id*. at ¶ 5.  Lor further states that on July 25, 2014, the Hahei Motion was served on Hahei in

28    "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101 California

United States District Court
Northern District of California

1    Street, 5th Floor San Francisco, CA 94111-5800." *Id.* at ¶ 6.   Lor declares that Hahei is not a

2    minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id.* at ¶ 8.

3        Moser submits a declaration that is substantially the same as the one described above, with

4    an identical Exhibit A.  Declaration of Richard Moser in Support of Renewed Application for

5    Default Judgment By Court Against Hahei, Ltd., ¶¶ 1-6, Ex. A. Moser declares that Hahei was in

6    default for the amount of $362,531.25 as of July 15, 2014, not including attorneys' fees or costs.

7    *Id.* at ¶ 6.

8        Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting

9    the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014,

10   giving rise to a total amount due as of December 15, 2014  of $371,593.75.  *See* Supplemental

11   Brief, Ex. A (Updated Spreadsheet).

12                **9.  Casiraghi**

13       The Clerk entered default as to Casiraghi on August 23, 2012.  Renewed Application For

14   Default Judgment By Court Against Defendant Luca Casiraghi ("Casiraghi Motion") at 3 (citing

15   Dkt. No. 104).  Plaintiff asserts that it is entitled to judgment against Casiraghi on its breach of

16   contract claim based on Casiraghi's obligation under the Partnership Agreement to make certain

17   capital contributions to RVII.  *Id.* at 4-5. Plaintiff seeks an award of: 1) $150,000.00 for the unpaid

18   principal; 2)  prejudgment interest in the amount of $31,265.63; 3)  post-judgment interest "that

19   continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited

20   partnership agreement," and  4) attorneys' fees in an unspecified amount.

21       Plaintiff submits declarations from Lor and Moser in support of its motion.  Lor declares

22   that Plaintiff filed a request for entry of Default against Casiraghi on August 20, 2012. Declaration

23   of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against

24   Defendant Luca Casiraghi, ¶ 4 (citing Dkt. No. 100).  Lor declares that default was entered three

25   days later. *Id.* at ¶ 5. Lor further states that on July 25, 2014, the Casiraghi Motion was served on

26   Casiraghi in "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101

27   California Street, 5th Floor San Francisco, CA 94111-5800."  *Id.* at ¶ 6. Lor declares that

28   Casiraghi is not a minor or incompetent person and the Service Members Civil Relief Act does not

1   apply. *Id.* at ¶ 8.

2       Moser submits a declaration that is substantially the same as the one described above, with

3   an identical Exhibit A. Declaration of Richard Moser in Support of Default Judgment By Court

4   Against  Defendant Luca Casiraghi, ¶¶ 1-6, Ex. A. Moser declares that Casiraghi was in default

5   for the amount of $181,265.63 as of July 15, 2014, not including attorneys' fees or costs. *Id.* at ¶ 6.

6       Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting

7   the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014,

8   giving rise to a total amount due as of December 15, 2014 of $185,796.88.  *See* Supplemental

9   Brief, Ex. A (Updated Spreadsheet).

### 10.  Mather

11      The Clerk entered default as to Mather on August 23, 2012. Renewed Application For

12  Default Judgment By Court Against Defendant David Mather ("Mather Motion") at 2 (citing Dkt.

13  No. 103).  Plaintiff asserts that it is entitled to judgment against Mather on its breach of contract

14  claim based on Mather's obligation under the Partnership Agreement to make certain capital

15  contributions to CEO Fund.  *Id.* at 3-4. Plaintiff seeks an award of: 1) $15,000.00 for the unpaid

16  principal; 2)  prejudgment interest in the amount of $2,854.69; 3)  post-judgment interest  "that

17  continues to accrue at 4% plus prime on the outstanding amount pursuant to the limited

18  partnership agreement," and  4) attorneys' fees in an unspecified amount.

19      Plaintiff submits declarations from Lor and Moser in support of its motion.  Lor declares

20  that Plaintiff filed a request for entry of Default against Mather on August 17, 2012.  Declaration

21  of Melissa S. Lor in Support of Renewed Application for Default Judgment By Court Against

22  Defendant David Mather, ¶ 4 (citing Dkt. No. 93).  Lor declares that default was entered six days

23  later. *Id.* at ¶ 5.  Lor further states that on July 24, 2014, the Mather Motion was served on Mather

24  in "c/o Designated Agent Rocket Ventures II, L.P. and /or  c/o Gordon C. Atkinson, 101

25  California Street, 5th Floor San Francisco, CA 94111-5800."  *Id.* at ¶ 6.  Lor declares that Mather

26  is not a minor or incompetent person and the Service Members Civil Relief Act does not apply. *Id.*

27  at ¶ 8.

28      Moser submits a declaration that is substantially the same as the one described above, with

United States District Court
Northern District of California

23

an identical Exhibit A.  Declaration of Richard Moser in Support of Renewed Application for Default Judgment By Court Against Defendant David Mather, ¶¶ 1-6, Ex. A. Moser declares that Mather was in default for the amount of $17,854.69 as of July 15, 2014, not including attorneys' fees or costs.  *Id.* at ¶ 6.

Finally, following the Motion hearing, Plaintiff provided an updated calculation reflecting the additional post-judgment interest that accrued between July 15, 2014 and December 15, 2014, giving rise to a total amount due as of December 15, 2014  of $18,307.81.  *See* Supplemental Brief, Ex. A (Updated Spreadsheet).

## III.    ANALYSIS

### A.    Entry of Default Judgment

#### 1.  Legal Standard

After default has been entered against a party, a district court may grant an application for default judgment in its discretion.  *See* Fed. R. Civ. P. 55(b)(2).[6]  The Court may not enter default judgment against a minor or incompetent person unless he or she is adequately represented.  *Id.* A plaintiff seeking default judgment also must aver that the defendant is not in military service entitled to the benefits of the Servicemembers Civil Relief Act of 2003 (50 App. U.S.C.A. §§ 501 *et seq.*).  In addition, the court must determine that service of process was adequate, *see  Bank of the West v. RMA Lumber Inc.*, No. 07-6469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008), and that the court has jurisdiction over the parties and the subject matter.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

If the court is satisfied that these prerequisites are met, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a

---

[6] As discussed in the previous report and recommendation, *see* Docket No. 158, under Rule 54(b) of the Federal Rules of Civil Procedure, a court may decline to enter default judgment where claims are still being litigated against other defendants, raising the possibility of inconsistent outcomes.  As all of the claims against the non-defaulting defendants in this action have now been resolved, however, there is no such risk and the Court may proceed to the merits on Plaintiff's default judgment motions against the Defaulting Defendants.

United States District Court
Northern District of California

dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal *Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917−18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### 2. Discussion

#### a. Prerequisites for Granting Default Judgment

In its previous report and recommendation, the undersigned found that the FAC was properly served on the Defaulting Defendants. Further, Plaintiff has provided declarations by Melissa Lor averring that the Defaulting Defendants are not minors, incompetents or serving in the military. With respect to subject matter jurisdiction, there is federal jurisdiction over Plaintiff's claims under the Small Business Investment Act of 1958, 15 U.S.C. § 687c, and the Consent order issued by this Court in Case No. C-08-02240 JSW, appointing Plaintiff as receiver. *See U.S. v. Franklin National Bank*, 512 F.2d 245, 249 (2d Cir. 1975) (federal district court where receiver is appointed has ancillary jurisdiction over claims by the receiver). Finally, the Court may exercise personal jurisdiction over the Defaulting Defendants under 28 U.S.C. § 754[7] and 28 U.S.C. § 1692, [8] which allow this Court to take exclusive jurisdiction of RVII SBIC's assets, wherever located, and provide that process may be served in any district in which the defendant maintains its principal office or transacts business, or wherever the defendant may be found. *See United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984) (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981) ("the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit").

---

[7] 28 U.S.C. § 754 provides that a receiver appointed in any civil action is "vested with complete jurisdiction and control of all such property with the right to take possession thereof" and has the "capacity to sue in any district without ancillary appointment."

[8] 28 U.S.C. § 1692, provides that "[i]n proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts."

United States District Court
Northern District of California

United States District Court
Northern District of California

### b. *Eitel* Factors

Having found that the prerequisites for entry of default judgment are met, the Court must consider the factors set forth in *Eitel*. The Court concludes these factors also support entry of default judgment.

Several factors require minimal analysis. Plaintiff would be prejudiced by denial of default judgment because Plaintiff has no other remedy where Defendants have failed to appear. The sum of money at stake is significant, but it is warranted under the Partnership Agreement and the facts alleged in the FAC. Although the Defaulting Defendants could conceivably dispute material facts if they were to appear, they have not appeared and thus have not raised any disputes. There is no indication that Defendants' default was due to excusable neglect. Finally, while there is a strong public policy favoring the resolution of disputes on the merits, that is not possible in this case because the Defaulting Defendants have failed to appear.

The Court also finds that the second and third *Eitel* factors, the merits of Plaintiff's claims and the sufficiency of its allegations, support entry of default judgment. In considering the sufficiency of the complaint on a motion for default judgment, courts look to the plaintiff's allegations to determine whether they state a claim on which the plaintiff may recover. *See Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, and must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the merits of a complaint, the court may (but is not required to) consider evidence such as affidavits submitted by the plaintiff. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987).

Here, as to each Defaulting Defendant Plaintiff has alleged that there was a contractual obligation to pay certain unfunded capital commitments by virtue of both the Partnership Agreement and the Consent that each Defaulting Defendant is alleged to have executed agreeing to be a Class B Limited Partner of either RVII or CEO Fund (or both). Plaintiff alleged facts

showing that this obligation was breached, identifying the specific amount each Defaulting

Defendant was required to (but did not) pay under the Partnership Agreement.  Finally, Plaintiff

provided the Partnership Agreement, which sets forth the obligations of the Class B Limited

Partners.  Plaintiff's claims against the Defaulting Defendants, therefore, are sufficiently alleged

and appear to have merit.

Based on the foregoing review of the *Eitel* factors, it is recommended that default

judgment be entered as to all of the Defaulting Defendants.

### B.    Remedy

Under Rule 54(c), the scope of relief "must not differ in kind from, or exceed in amount,

what is demanded in the pleadings."  Fed.R.Civ.P. 54(c).   Further, a plaintiff seeking default

judgment "must 'prove up' the amount of damages that it is claiming."  *Philip Morris USA, Inc. v.

Castworld Products, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).  Here, Plaintiff seeks the unpaid

capital commitment owed by each Defaulting Defendant and prejudgment interest.  As noted

above, Plaintiff has stipulated that it will not seek an award of attorneys' fees against the

Defaulting Defendants.

### 1.    Unpaid Principal Amounts

The amounts Plaintiff seeks in unpaid commitments for each of the Defaulting Defendants,

as reflected in the Updated Spreadsheet, match the amounts alleged to be due in the FAC  and

therefore do not exceed in amount what is demanded in the pleadings.  In addition, for each

Defaulting Defendant, Plaintiff has provided a declaration by Richard Moser, who is Principal

Agent to the Receiver and has reviewed the books and records of Rocket Ventures, attesting to the

amount of the unpaid contribution owed by that Defendant.  With respect to Defendant Stainton,

Plaintiff has provided a revised calculation of outstanding contributions, as noted above,

correcting an error in the original Moser Declaration as to the amount.  This evidence is sufficient

to establish the amount of the unpaid capital contribution owed by each Defaulting Defendant.

Finally, to the extent the capital contributions owed by the Class B partners are based on the non-

payment of amounts owed by the Class A partners, Plaintiff stipulated in a supplemental brief

filed January 16, 2015, that "[i]t has always been the Receiver's understanding and intention that

any future recoveries received from the RV II Class B partners and RV CEO Class B partners must be credited against the Judgment." Dkt. No. 207 ("Second Supplemental Brief")  at 3. Plaintiff acknowledges that this understanding was not expressly stated in the Settlement Agreement with the Class A partners but states that "it may be incorporated in any default judgment issued by this Court to ensure against double recoveries." *Id.*[9]  Therefore, the amounts set forth in the Updated Spreadsheet (Dkt. No. 205, Ex. A), in the first column of the schedule, should be awarded in full as to all of the Defaulting Defendants, with the proviso that any amount received from the Defaulting Defendants shall be credited against the Judgment against the Class A partners, as stipulated by the Receiver.

### 2.  Prejudgment Interest

Plaintiff also seeks prejudgment interest on the unpaid capital contributions owed by the Defaulting Defendants.  Under the Partnership Agreement, Section 5.07(a)(i), Plaintiff is entitled to prejudgment interest on unpaid capital contributions at the prime rate plus 4%, calculated from the original due date until the payment is received.  *See* FAC, Ex. B (Partnership Agreement).  The Updated Spreadsheet provided by the Receiver lists the starting dates of Plaintiff's calculation – which match the dates alleged in the FAC on which the Defaulting Defendants went into default. It also reflects that Plaintiff calculated prejudgment interest using the prime rate plus 4%, that is, 7.25%, which is consistent with the Partnership Agreement.  Therefore, the amounts requested in the "Interest" column of the Updated Spreadsheet should be awarded in full.  In addition, Plaintiff is entitled to post-judgment interest at a rate of prime plus 4% from December 15, 2014 (the end date for the interest calculation in the Updated Spreadsheet) until the judgment is satisfied.

### IV.    CONCLUSION

For the reasons stated above, it is recommended that the Court GRANT Plaintiff's motions for default judgment as to all of the Defaulting Defendants.  The proposed judgments provided by

---

[9] In addition, Plaintiff has presented evidence showing that, as a practical matter, the payments it has already received from the non-defaulting Class B partners and under the Settlement Agreement with the Class A partners falls far short of the full amount owed, making double recovery highly unlikely.  *Id.*

Plaintiff in Dkt. Nos. 205-1 through 205-10 accurately reflect the amounts owed by the Defaulting

Defendants and are consistent with the recommendation of the undersigned.

Dated: February 9, 2015

_____
JOSEPH C. SPERO
United States Magistrate Judge